**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

_____
                                                    )
**IN RE YASMIN AND YAZ (DROSPIRENONE** )        **3:09-md-02100-DRH-CJP**
**MARKETING, SALES PRACTICES AND**        )
**PRODUCTS LIABILITY LITIGATION**            )        **MDL No. 2100**
_____)

                                                              **COMPLAINT AND**
                                                              **JURY DEMAND**


**This Document Relates to:**
_____

**KERRY SIMS,**

**Plaintiff,**

**v.**                                                          **3:09-cv-10012-DRH-CJP**

**BAYER CORPORATION,**
**BAYER HEALTHCARE**
**PHARMACEUTICALS INC.,**
**BAYER HEALTHCARE, LLC,**
**WALGREEN CO. d/b/a WALGREENS**

        **Defendants.**

---

### FIRST AMENDED COMPLAINT

Plaintiff Kerry Sims, St. Clair County, Illinois, by and through counsel, and for

her First Amended Complaint against Defendants, alleges as follows:

### PARTIES AND JURISDICTION

1.        This is an action brought by Plaintiff Kerry Sims, who used the

combination oral contraceptive Yaz and/or Yasmin, also known generically as

drospirenone and ethinyl estradiol (hereinafter collectively referred to as "Yaz/Yasmin").

2.     Plaintiff Kerry Sims was prescribed and purchased and ingested Yaz/Yasmin, and while using Yaz/Yasmin suffered bilateral pulmonary emboli and pleurisy in July 2008.

3.     Plaintiff Kerry Sims is a resident and citizen of Belleville, Illinois, located in St. Clair County.

4.     Defendant Walgreen Co., d/b/a Walgreens is an Illinois corporation with its principle place of business located in Deerfield, Illinois.  The plaintiff purchased Yaz/Yasmin birth control from the Walgreens in Belleville, Illinois. Walgreens, for diversity purposes, is a citizen of the state of Illinois.  Walgreens has sold Yaz/Yasmin to many other St. Clair city residents in the regular course of its business.  Therefore, there is no federal diversity jurisdiction and this case must be filed in St. Clair County, Illinois.

5.     Defendant Bayer Corporation is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205. Defendant Bayer Corporation is the sole member of Bayer Healthcare LLC, which owns 100% of Schering Berlin, Inc., which owns 100% of Defendant Bayer HealthCare Pharmaceuticals, Inc. As such, Defendant Bayer Corporation is a parent of Defendant Bayer Healthcare Pharmaceuticals, Inc.

6.     At relevant times, Defendant Bayer Corporation was engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yaz/Yasmin. At relevant times, Defendant Bayer Corporation conducted regular and

sustained business in Illinois by selling and distributing its products in Illinois and engaged in substantial commerce and business activity in St. Clair County.

7.       Defendant Bayer Healthcare Pharmaceuticals, Inc., formerly known as Bayer Pharmaceuticals Corporation, and also formerly known Berlex Laboratoires, Inc., which was formerly known as Berlex, Inc., is a Delaware corporation, with its principal place of business at 6 West Belt Road, Wayne, New Jersey, 07470. Bayer Healthcare Pharmaceuticals, Inc. was created by the integration of Bayer Healthcare and Berlex Laboratories. Defendant Bayer Healthcare Pharmaceuticals, Inc. is the U.S.-based pharmaceuticals unit of Schering Berlin, Inc. and is a division of Bayer AG.

8.       Defendant Bayer Healthcare Pharmaceuticals, Inc. is a corporate successor to Berlex Laboratories, Inc. (Berlex), which was formerly known as Berlex, Inc., and as such is obligated for its predecessor's liabilities.  Berlex was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling directly and indirectly through third parties or related entities, the drug Yaz/Yasmin.

9.       Defendant Bayer Healthcare Pharmaceuticals, Inc. is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yaz/Yasmin. At relevant times, Defendant Bayer Healthcare Pharmaceuticals, Inc. conducted regular and sustained business in Illinois by selling and distributing its products in Illinois and engaged in substantial commerce and business activity in St. Clair County.

10.     Berlex Laboratories International, Inc. was engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yaz/Yasmin. At all relevant times, Berlex Laboratories International, Inc. conducted regular and sustained business in Illinois by selling and distributing its products in Illinois and engaged in substantial commerce and business activity in St. Clair County. Berlex Laboratories International, Inc. was a Delaware corporation with its principal place of business in Montville, New Jersey. Berlex Laboratories International, Inc. was integrated with Bayer Healthcare, leading to the creation of Bayer Healthcare Pharmaceuticals, Inc. As such, Defendant Bayer Healthcare Pharmaceuticals, Inc. is liable for the actions and omissions of Berlex Laboratories International, Inc.

11.     Defendant Bayer Healthcare, LLC is a Delaware limited liability company, with its principal place of business at 555 White Plains Road, Tarrytown, New York, 10591. Bayer Healthcare, LLC was involved in the integration of Bayer Healthcare and Berlex Laboratories. Defendant Bayer Healthcare, LLC is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yaz/Yasmin. At relevant times, Defendant Bayer Healthcare, LLC conducted regular and sustained business in Illinois by selling and distributing its products in Illinois and engaged in substantial commerce and business activity in St. Clair County.

12.     Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., and Bayer Healthcare, LLC, are collectively referred to herein as "Bayer" or " Bayer Defendants."

## FACTUAL BACKGROUND

### Nature of the Case

13.     Plaintiff Kerry Sims brings this case against Defendants for damages associated with Plaintiff Kerry Sims's ingestion of the pharmaceutical drug Yaz/Yasmin (ethinyl estradiol and drospirenone), an oral contraceptive designed, manufactured, marketed, and distributed by Defendants. Specifically, as a direct result of her use of Yaz/Yasmin, Plaintiff Kerry Sims suffered bilateral pulmonary emboli and pleurisy.

### Bayer's Combined Oral Contraceptives - Yaz/Yasmin and Yasmin

14.     Yaz and Yasmin are birth control pills manufactured and marketed by Defendants. They are combination oral contraceptives, or "COCs," meaning that they contain an estrogen component and a progestin component. Together, these steroidal components work together in COCs to suppress ovulation, fertilization, and implantation and thus prevent pregnancy.

15.     Yaz and Yasmin were approved by the Food and Drug Administration for marketing in 2006 and 2001, respectively.

### Yaz and Yasmin contain a "Fourth Generation" Progestin.

16.     The estrogen component in Yaz and Yasmin is known generically as ethinyl estradiol. The progestin component is known as drospirenone. Yasmin contains 0.03 milligrams of ethinyl estradiol, and Yaz contains 0.02 milligrams of ethinyl estradiol. Both products contain 3 milligrams of drospirenone.

17.     Yaz and Yasmin are different from other combined hormonal birth control pills in that they contain drospirenone, a progestin that is unlike other progestins available in the United States and was never before marketed in the United States prior to its use in Yasmin.

18.     Shortly after the introduction of combined oral contraceptives in the 1960's, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks, and strokes than women not using the pill. As a result, the various brands of birth control pills were reformulated to reduce the amounts of estrogen. As the amounts of estrogen levels reduced, so too did the risk of blood clots, heart attacks, and strokes.

19.     During this time, new progestins were being developed, which became known as "second generation" progestins (e.g. lovenorgestrel). These second generation progestins, when combined with the lower amounts of the estrogen, ethinyl estradiol, helped to reduce the risk of blood clots, heart attacks, and strokes and were considered safer for women.

20.     During the 1990's, new "third generation" progestins were developed. Unfortunately, these "third generation" progestins (e.g. gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein thrombosis or "DVT") and lungs (pulmonary embolism or "PE"). As a result of this increased risk of blood clots, the FDA has required that products containing third generation progestins include a Warning of the potentially increased risk of thrombosis.

21.     Yaz and Yasmin contain the same estrogen component, ethinyl estradiol, that has been used in the lower dose birth control pills for decades.

22.     However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin. No other birth control pills contain drospirenone, except for a recently approved generic version of Yaz and Yasmin marketed under the trade name Ocella.

23.     Since drospirenone is new, there is insufficient data available to support its safe use, particularly compared with second generation progestins. In fact, studies performed prior to FDA approval indicate that drospirenone has certain effects that are different from those of traditional second generation progestins, and potentially more dangerous.

24.     One possible mechanism of action is that drospirenone causes an increase in potassium levels in the blood, which can lead to a condition known as hyperkalemia if the potassium levels become too high. Hyperkalemia can cause heart rhythm disturbances, such as extrasystolies, pauses, or bradycardia. If left untreated, hyperkalemia can be fatal. If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the heart can be slowed to the point that it permits blood clots to form. Blood clots in the heart can then lead to heart attacks, or the clots can break off and travel to the lungs where they can cause pulmonary embolism, or can travel to the brain causing stroke.

25.     During the brief time that Yaz and Yasmin have been sold in the United States, hundreds of reports of injury and death have been submitted to the FDA in association with Defendants' products.

26.     In April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be

prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

27.     In February 2003, a paper entitled *Thromboembolism Associated With the New Contraceptive Yasmin* was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolism where Yasmin was suspected as the cause, including two deaths.

28.     In fact, in less than a five-year period, from the first quarter of 2004 through the third quarter of 2008, over 50 reports of death among users of Yaz/Yasmin have been filed with the FDA.

29.     These reports include deaths associated with cardiac arrhythmia, cardiac arrest, intracardiac thrombus, pulmonary embolism, and stroke in women in their child bearing years.

30.     Some deaths reported occurred in women as young as 17 years old.

31.     Significantly, reports of elevated potassium levels are frequently included among the symptoms of those suffering death while using Yaz/Yasmin.

## Over-Promotion of Yaz/Yasmin

32.     Defendants market Yaz/Yasmin as providing the same efficacy as other birth control pills in preventing pregnancy, but with additional benefits.

33.     However, because Yaz/Yasmin contain the fourth generation progestin drospirenone, they present additional health risks not associated with other birth control pills.

34.     For example, prior to its sale to Defendant Bayer in 2006, Defendant Berlex Laboratories promoted Yasmin's fourth generation progestin, drospirenone, by stating, "Ask about Yasmin, and the difference a little chemistry can make."

35.     In response, on July 10, 2003, the FDA objected to the characterization that drospirenone was a benefit compared to the progestin used in other combined oral contraceptives, and issued a warning letter stating, "FDA is not aware of substantial evidence of substantial clinical experience demonstrating that Yasmin is superior to other COCs or that the drospirenone in Yasmin is clinically beneficial. On the contrary, FDA is aware of the added clinical risks associated with drospirenone [.]"

36.     The FDA's warning letter continued by stating that the advertisement failed "to communicate that the potential to increase potassium is a risk" or that "increased serum potassium can be dangerous."

37.     More recently, Defendants advertised that its product Yaz/Yasmin was indicated for treatment of premenstrual syndrome or "PMS," as opposed to the less serious condition of premenstrual dysphoric disorder or "PMDD."

38.     Defendants also advertised that Yaz/Yasmin contained the added benefit of preventing or reducing acne.

39.     In response, on October 3, 2008, the FDA issued another warning letter to Defendant Bayer for the misleading advertisement, reiterating that the marketing was misleading because it promoted Yaz/Yasmin for medical conditions beyond the limits of the FDA approval, and adding that "Yaz/Yasmin has additional risks because it contains the progestin, drospirenone ... which can lead to hyperkalemia in high risk patients, which may result in potentially serious heart and health problems."

40.     The FDA further warned in its October 3, 2008 letter that Yaz/Yasmin "does not result in completely clear skin" and that Defendants' "TV Ads misleadingly overstate the efficacy of the drug."

41.     Indeed, the FDA felt Defendants' over-promotion was so severe that it required Bayer to run new TV advertisements to correct the previous misleading Yaz/Yasmin advertisements regarding acne and premenstrual syndrome.

42.     Bayer ultimately agreed to spend at least $20 million on corrective TV advertisements and to submit all Yaz/Yasmin advertisements to the FDA for advanced screening for the next six years.

## Plaintiff's Use of Yaz/Yasmin and Resulting Injuries

43.     As a result of Defendants' claims regarding the effectiveness, safety, and benefits of Yaz/Yasmin, including Defendants' regarding Yaz/Yasmin's reduction or prevention of acne, Plaintiff Kerry Sims's medical provider prescribed and Plaintiff Kerry Sims began using Yaz/Yasmin in or about June, 2008.

44.     As a direct and proximate result of using Yaz/Yasmin, Plaintiff Kerry Sims suffered pulmonary emboli and pleurisy.

45.     Prior to Plaintiff Kerry Sims's use of Yaz/Yasmin, Defendants knew or should have known that use of Yaz/Yasmin created a higher risk of pulmonary embolism than other oral contraceptives on the market, including but not limited to second generation oral contraceptives, and that, when taken as directed, such use was unreasonably dangerous to consumers.

46.     Therefore, at the time Plaintiff Kerry Sims used Yaz/Yasmin, Defendants knew or should have known that the use of Yaz/Yasmin created an increased risk to

consumers of serious personal injury, including deep vein thrombosis, pulmonary

embolism, heart attacks, stroke, and even death.

47.     Despite the fact that Defendants knew or should have known of the serious

health risks associated with the use of Yaz/Yasmin, Defendants failed to warn Plaintiff

Kerry Sims and/or her health care providers of said serious risks before she used the

product.

48.     Had Plaintiff Kerry Sims and/or her heath care providers known the risks

and dangers associated with Yaz/Yasmin, she would not have used Yaz/Yasmin and

would not have suffered bilateral pulmonary emboli and pleurisy.

49.     As a direct and proximate result of her use of Yaz/Yasmin, Plaintiff Kerry

Sims suffered physical injury, including but not limited to, conscious pain and suffering,

as a result of her bilateral pulmonary emboli and pleurisy.

50.     As a direct and proximate result of Plaintiff Kerry Sims's use of

Yaz/Yasmin, Plaintiff Kerry Sims has suffered and will continue to suffer pecuniary

losses.

### FIRST CAUSE OF ACTION

**Strict Products Liability**
**Defective Manufacturing**
**As to Bayer Defendants**

51.     Plaintiff Kerry Sims incorporates by reference, as if fully set forth herein,

each and every allegation set forth in the preceding paragraphs and further allege as

follows.

52.     Defendants are the manufacturers, designers, distributors, sellers, or

suppliers of Yaz/Yasmin.

53.     The Yaz/Yasmin birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants were expected to and did reach the consumer without any alterations or changes.

54.     The Yaz/Yasmin birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, were defective in their manufacture and construction when they left the hands of Defendants in that they deviated from product specification such that they were unreasonably dangerous to an ordinary user or consumer and posed a serious risk of injury and death.

55.     As a direct and proximate result of Plaintiff Kerry Sims's use of Yaz/Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Kerry Sims suffered personal injuries, economic and non-economic damages.

56.     Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously and/or intentionally disregarded Plaintiff's rights, so as to warrant the imposition of punitive damages. Plaintiff reserves the right to present evidence justifying the imposition of punitive damages after a hearing before the court and in accordance with 735 ILCS 5/2-604.1.

**SECOND CAUSE OF ACTION**

**Strict Products Liability**
**Design Defect**
**As to Bayer Defendants**

57.     Plaintiff Kerry Sims incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

12

58.     Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yaz/Yasmin.

59.     The Yaz/Yasmin birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants were expected to and did reach the consumer without any alterations or changes.

60.     The Yaz/Yasmin birth control pills manufactured and supplied by Defendants were defective in design or formulation in that, when it left the hands of the Defendants, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, or they were more dangerous than an ordinary consumer would expect.

61.     The foreseeable risks associated with the design or formulation of the Yaz/Yasmin birth control pills, include, but are not limited to, the fact that the design or formulation of Yaz/Yasmin is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

62.     As a direct and proximate result of Plaintiff Kerry Sims's use of Yaz/Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Kerry Sims suffered personal injuries, economic and non-economic damages, including pain and suffering.

63.     Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously and/or intentionally disregarded Plaintiff Kerry Sims's rights, so as to warrant the imposition of punitive damages. Plaintiff reserves the right to present evidence justifying the imposition of punitive damages after a hearing before the court and in accordance with 735 ILCS 5/2-604.1.

## THIRD CAUSE OF ACTION

### Negligence
### As to Bayer Defendants

64.     Plaintiff Kerry Sims incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

65.     Defendants had a duty to exercise reasonable care in the design, manufacture, sale and/or distribution of Yaz/Yasmin into the stream of commerce, including a duty to assure that its product did not pose a significantly increased risk of bodily harm and adverse events.

66.     Defendants failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of Yaz/Yasmin into interstate commerce in that Defendants knew or should have known that the product caused such significant bodily harm or death and was not safe for use by consumers.

67.     Defendants also failed to exercise ordinary care in the labeling of Yaz/Yasmin and failed to issue to consumers and/or their health care providers adequate warnings of the risk of serious bodily injury or death due to the use of Yaz/Yasmin.

68.     Despite the fact that Defendants knew or should have known that Yaz/Yasmin posed a serious risk of bodily harm to consumers, Defendants continued to manufacture and market Yaz/Yasmin for use by consumers.

69.     Defendants knew or should have known that consumers, including Plaintiff Kerry Sims, would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

70.     As a direct and proximate result of Defendants' negligence, Plaintiff Kerry Sims suffered personal injuries, economic and non-economic damages.

71.     Defendants' conduct as described above, including but not limited to its failure to adequately test Yaz/Yasmin, to provide adequate warnings, and its continued manufacture, sale and marketing of the product when it knew or should have known of the serious health risks it created, evidences  actions and/or intentional disregard of the rights of Plaintiff Kerry Sims, so as to warrant the imposition of punitive damages. Plaintiff reserves the right to present evidence justifying the imposition of punitive damages after a hearing before the court and in accordance with 735 ILCS 5/2-604.1.

### FOURTH CAUSE OF ACTION

### Negligent Misrepresentation and/or Fraud
### As to Bayer Defendants

72.     Plaintiff Kerry Sims incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

73.     Defendants are the manufacturers, designers, distributors, sellers or suppliers of Yaz/Yasmin and made representations to Plaintiff and her healthcare providers regarding the character or quality of Yaz/Yasmin for guidance in their decision to select Yaz/Yasmin.

74.     Specifically, Defendants represented that Yaz/Yasmin was just as safe or safer, and just as effective or more effective, than other birth control products on the market.

75.     Defendants' representations regarding the character or quality of Yaz/Yasmin were untrue.

76.     Defendants had actual knowledge based upon studies, published reports and clinical experience that its product Yaz/Yasmin created an unreasonable risk of serious bodily injury and death to consumers, or should have known such information.

77.     Defendants negligently and/or intentionally misrepresented or omitted this information in its product labeling, promotions and advertisements and instead labeled, promoted and advertised its product as safer and more effective than other types of oral contraceptives in order to avoid losses and sustain profits in its sales to consumers.

78.     In supplying the false information, Defendants failed to exercise reasonable care or competence in obtaining or communicating information to Plaintiff Kerry Sims and her healthcare providers.

79.     Plaintiff Kerry Sims and her healthcare providers reasonably relied upon Defendants' misrepresentations and/or omissions in its labeling, advertisements, and promotions concerning the serious risks posed by the product. Plaintiff Kerry Sims reasonably relied upon Defendants' representations to her and/or her healthcare providers that Yaz/Yasmin was safer than other types of oral contraceptives for human consumption and/or use and that Defendants' labeling, advertisements and promotions fully described all known risks of the product.

80.     As a direct and proximate result of Defendants' negligent and/or intentional misrepresentations or omissions, Plaintiff Kerry Sims suffered personal injuries and economic and non-economic damages, including pain and suffering.

81.     Defendants' actions and omissions as identified in this Complaint demonstrate malicious actions and/or intentional disregard of Plaintiff Kerry Sims's rights so as to warrant the imposition of punitive damages. Plaintiff reserves the right to

present evidence justifying the imposition of punitive damages after a hearing before the court and in accordance with 735 ILCS 5/2-604.1.

### FIFTH CAUSE OF ACTION

### Negligent Misrepresentation
### As to Defendant Walgreens

82.     Plaintiff Kerry Sims incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

83.     Defendant is the distributor, seller and/or supplier of Yaz/Yasmin and made representations to Plaintiff regarding the character or quality of Yaz/Yasmin for guidance in her decision to ingest Yaz/Yasmin.

84.     Specifically, Defendant represented that Yaz/Yasmin was just as safe or safer, and just as effective or more effective, than other birth control products on the market.

85.     Defendant's representations regarding the character or quality of Yaz/Yasmin were untrue.

86.     Defendant had actual knowledge based upon studies, published reports and clinical experience that its product Yaz/Yasmin created an unreasonable risk of serious bodily injury and death to consumers, or should have known such information.

87.     Defendant negligently misrepresented or omitted this information in its product labeling, promotions and/or advertisements and instead labeled, promoted and advertised its product as being as safe or just as safe or safer, and just as effective, than other types of oral contraceptives in order to avoid losses and sustain profits in its sales to consumers.

88.     In supplying the false and misleading information, Defendant failed to exercise reasonable care or competence in obtaining or communicating information to Plaintiff Kerry Sims.

89.     Plaintiff Kerry Sims reasonably relied upon Defendant's misrepresentations and/or omissions in its labeling, advertisements, and promotions concerning the serious risks posed by the product. Plaintiff Kerry Sims reasonably relied upon Defendant's representations to her that Yaz/Yasmin was safer than other types of oral contraceptives for human consumption and/or use and that Defendants' labeling, advertisements and promotions fully described all known risks of the product.

90.     As a direct and proximate result of Defendant's negligent and/or intentional misrepresentations or omissions, Plaintiff Kerry Sims suffered personal injuries and economic and non-economic damages, including pain and suffering.

91.     Defendant's actions and omissions as identified in this Complaint demonstrate malicious actions, and/or intentional disregard of Plaintiff Kerry Sims's rights so as to warrant the imposition of punitive damages. Plaintiff reserves the right to present evidence justifying the imposition of punitive damages after a hearing before the court and in accordance with 735 ILCS 5/2-604.1.

## SIXTH CAUSE OF ACTION

### Breach of Express Warranty as to Bayer Defendants

92.      Plaintiff Kerry Sims incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

93.     The Bayer Defendants expressly warranted that Yaz/Yasmin was a safe and effective prescription contraceptive.

94.    The Yaz/Yasmin birth control patch manufactured and sold by Defendants did not conform to these express representations because it caused serious injury to consumers when taken in recommended dosages.

95.    As a direct and proximate result of the Bayer Defendants' breach of warranty, Plaintiff Kerry Sims has suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

96.    Defendants' actions and omissions as identified in this Complaint demonstrate malicious actions and/or intentional disregard of Plaintiff Kerry Sims's rights so as to warrant the imposition of punitive damages. Plaintiff reserves the right to present evidence justifying the imposition of punitive damages after a hearing before the court and in accordance with 735 ILCS 5/2-604.1.

## SEVENTH CAUSE OF ACTION

### Breach of Implied Warranty as to Bayer Defendants

97.    Plaintiff Kerry Sims incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

98.    At the time the Defendants designed, manufactured, marketed, sold, and distributed Yaz/Yasmin for use by Plaintiff Kerry Sims, Defendants knew of the use for which Yaz/Yasmin was intended and impliedly warranted the product to be of merchantable quality and safe for such use.

100.    Plaintiff Kerry Sims reasonably relied upon the skill and judgment of the Defendants as to whether Yaz/Yasmin was of merchantable quality and safe for its intended use and upon the Defendants' implied warranty as to such matters.

19

101.    Contrary to such implied warranty, Yaz/Yasmin was not of merchantable quality or safe for its intended use, because the product was reasonably dangerous as described above.

102.    As a direct and proximate result of the Defendants' breach of warranty, Plaintiff Kerry Sims has suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

103.    Defendants' actions and omissions as identified in this Complaint demonstrate malicious action and/or intentional disregard of Plaintiff Kerry Sims's rights so as to warrant the imposition of punitive damages. Plaintiff reserves the right to present evidence justifying the imposition of punitive damages after a hearing before the court and in accordance with 735 ILCS 5/2-604.1.

## EIGHTH CAUSE OF ACTION

### Breach of Implied Warranty as to Defendant Walgreens

104.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

105.    Plaintiff purchased the defective and dangerous Yaz/Yasmin from Walgreens in St. Clair County, pursuant to prescriptions from her physicians.

106.    In selling Yaz/Yasmin to plaintiff, Walgreens impliedly warranted that Yaz/Yasmin was safe for its intended use, was free from manufacturing or production defects, and would perform as indicated.  Walgreens also impliedly warranted that Yaz/Yasmin caused no side effects other than those listed in the package insert.

107.    Walgreens breached these warranties by selling by plaintiff Yaz/Yasmin that was not of merchantable quality, was unsafe and whose potential side effects were substantially untested.

108.    As a direct and proximate result of Walgreens' breach of implied warranties, plaintiff has been damaged as described herein.

109.    Defendant's actions and omissions as identified in this Complaint demonstrate malicious actions and/or intentional disregard of Plaintiff Kerry Sims's rights so as to warrant the imposition of punitive damages. Plaintiff reserves the right to present evidence justifying the imposition of punitive damages after a hearing before the court and in accordance with 735 ILCS 5/2-604.1.

### NINETH CAUSE OF ACTION

### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act as to Bayer Defendants

110.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

111.    At all times relevant, the Illinois Consumer Fraud & Deceptive Practices Act, 815 ILCS 505/1 et seq., (hereinafter "IFCA") prohibits "the use of any deception, fraud, false pretense, false promise, misrepresentation or concealment, suppression or omission of any material fact…in the conduct of any trade or commerce" and declares such acts or practices as unlawful.

112.    Defendants violated the IFCA by the use of false and misleading misrepresentations or omissions of material fact in connection with the marketing, promotion, and sale of Yaz/Yasmin.  Defendants communicated the purported benefits of Yaz/Yasmin while failing to disclose the serious and dangerous side effects related to the

use of Yaz/Yasmin with the intent that consumers, like Plaintiff, and their healthcare providers rely upon the omissions and misrepresentations and purchase or prescribe Yaz/Yasmin, respectively.

113.    As a result of violating the ICFA, Defendants caused Plaintiff to be prescribed and to use Yaz/Yasmin, causing severe injuries and damages as previously described herein.

114.    Defendants' actions and omissions as identified in this Complaint demonstrate malicious actions and/or intentional disregard of Plaintiff Kerry Sims's rights so as to warrant the imposition of punitive damages. Plaintiff reserves the right to present evidence justifying the imposition of punitive damages after a hearing before the court and in accordance with 735 ILCS 5/2-604.1.

**WHEREFORE,** Plaintiff Kerry Sims prays for relief as follows:

1.    Compensatory and punitive damages in excess of the jurisdictional amount, including, but not limited to non-economic damages in excess of $350,000.00;

2.    Medical expenses and other economic damages in an amount to be determined at trial of this action;

3.    Attorneys' fees, expenses, and costs of this action;

4.    Punitive damages in excess of twice the compensatory damages award;

5.    Pain and suffering suffered by Decedent; and

6.    Such further relief as this Court deems necessary, just, and proper.

### JURY DEMAND

Plaintiff Kerry Sims hereby demands a trial by jury on all issues so triable.

Dated: January 11, 2010

By: Elizabeth M. Wilkins_____
    Roger C. Denton, #06182610
    Kristine K. Kraft, #6208262
    Elizabeth M. Wilkins, #6295548
    SCHLICHTER, BOGARD & DENTON
    100 S. 4th Street, Suite 900
    St. Louis, MO 63102
    Telephone: 314-621-6115
    Facsimile:  314-621-7151
    rdenton@uselaws.com
    kkraft@uselaws.com
    bwilkins@uselaws.com

    Illinois Office:
    120 W. Main Street, Ste. 208
    Belleville, IL  62220


    ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 11, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record:

Terry Lueckenhoff, Esq.
John E. Galvin, Esq.
Michael E. Donelson, Esq.
Fox Galvin, LLC
One S. Memorial Drive, 12th Floor
St. Louis, MO 63102

*Attorneys for Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals Inc., and Bayer Healthcare LLC*

Denise Baker-Seal, Esq.
Brown & James, P.C.
Richland Plaza 1
525 West Main St.
Suite 200
Belleville , IL 62220

*Attorney for Walgreen Co., d/b/a Walgreens*

/s/ Elizabeth M. Wilkins