## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE:  YASMIN AND YAZ (DROSPIRENONE) MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | )  3:09-md-02100-DRH-PMF<br>)<br>)  MDL No. 2100<br>) |

**This Document Relates to:** *Kerry Sims v. Bayer Corp., et al.,* No. 3:09-cv-10012-DRH-PMF

## ORDER

### Talarico Deposition Designations

### I.   Introduction

The parties are in the process of designating portions of depositions that will be presented to the jury in the imminent trial.  This is a worthwhile process since it is disingenuous to think that a jury would be the least bit interested in every minute of deposition testimony that is taken as it is common knowledge that interrogation is approached with a liberal attitude knowing full well that one can take away but never add to a deposition.  Furthermore, in an effort to save time during trial the parties are designating their respective objections now rather than later for obvious reasons.  As will be seen, this process can be efficient or wrought with pitfalls.  This is the first of many depositions to be presented to the Court for this process.  Given the number of depositions the Court is led to believe exist

1

and the number of hours the Court spent on this deposition, the process should take no longer than end of 2014 to conclude.

The Court has considered the general and specific objections submitted by the parties relative to the deposition of Rosina Talarico.  The plaintiff continues to object to the method defendant has chosen for raising objections (objecting to specific questions) and contends that the disputed objections should have been covered by the original motions *in limine* that defendant filed.  Therefore, plaintiff continues to treat them as motions *in limine* and responds accordingly, asserting to the court that it is inappropriate to handle the subject matter contained in the motions *in limine* and instead should have been filed and analyzed through the vehicle of motions for summary judgment.  In that fashion, plaintiff seeks the standard of review regarding that which should be reviewed by the fact finder and that which must be ruled upon by the court.  The court fails to discern the difference in practical terms.

The difference in the method chosen by the defendant is that instead of the court being asked to rule on these subjects without reference to specific example of actual evidence, the court will be able to view particular evidentiary examples to aid its analysis.  That is not to say that the court cannot issue a general ruling, which it intends to do, and continue to view specific examples of evidence to weigh against that ruling to determine if the particular evidence fits within the general ruling or is an exception to the general ruling.  Likewise, the defendant then has a record for review of specific rulings and the reviewing court has an opportunity to

assess the prejudice to the defendant of the specific evidentiary ruling on the ultimate outcome of the case, as opposed to a trough of evidence that comes within a general ruling that was not otherwise analyzed.

The Court now has a more thorough understanding of the plaintiff's frustration with the process as it is reflected in this deposition.  The 199 objections filed by the defendant in this one deposition would seem to this judge to be an inefficient and unreasonable means to make objections even to satisfy a need to make a clear and thorough record.  Clearly, the defendant can make a record for appeal by generally objecting to the examination of exhibits as a whole rather than dissecting the exhibits through testimony line by tedious line.  Under no circumstances would a party dare to approach the appellate court with hundreds of objections for every appeal.  As the Court alluded to in court, were it to force the parties to make their objections in the presence of the jury, it is quite likely that a much more efficient method would be pursued as opposed to one that forces this civil servant to devote hours upon hours of a holiday weekend trudging through identical objections.  At this rate this trial will result in tens of thousands issues, just in deposition objections, from which the losing party can select the best four or five, not four or five thousand, but four or five for appeal.

## II.    Analysis

### A.    Overview

The vast majority of the objections can be ruled upon by a general ruling. Those objections are generalized as (1) lack of relevance, having to do with the issue of off label use, which the defendant contends has nothing to do with this case and (2) lack of reliance, which is short hand for saying related to marketing, which the defendant says is irrelevant because neither the plaintiff nor her doctor relied on any of the discussed marketing and this is not a marketing case anyway. On occasion, the additional objection of media report MIL or controversy MIL is included.

The Court's ruling and rationale regarding those objections which can be ruled upon by a general ruling are set forth in section II.B., below.    The objections filed by the parties which require analysis beyond that provided in the Court's general ruling are set forth in section II.C., below.

The Court's general ruling and rationale are applied even in those circumstances where the objections are made in conjunction with other objections and the Court rules on the other objections without mentioning the objections to relevance or Rule 403 based on off label, no reliance, media report or controversy issues.

**As to all objections, unless otherwise stated by the court, where the objection is a relevance objection and a Rule 403 objection, along with media**

**report MIL and controversy MIL, the objection is overruled based on the rationale in section II.B., below.**

It is noted that there are many, many (too many) objections as to form to questions during the deposition.  Generally, with very few exceptions, the parties waived these objections.  Objections to form are overruled as waived and/or on the merits.  Where specifically ruled on below, the ruling speaks for itself.

**B.      General Ruling**

**1.      Marketing Material**

The defendant argues that the *Sims* case is not a marketing case and that any evidence about marketing is irrelevant.  That statement was news to the court, after presiding over a great deal of discovery and meeting monthly with counsel for both sides for the last two plus years.  Plaintiff confirmed through counsel that there indeed is a marketing component to the *Sims* case.  Marketing, the plaintiff asserts, has a great deal to do with how doctors such as Dr. Shores, plaintiff's prescribing physician, were advised by Bayer through sales representatives among others regarding the relative safety of YAZ (and Yasmin) and the proper uses of the drugs.  Plaintiff insists that she took the drug YAZ for off label uses, as a direct result of Bayer's marketing, and the defendant insists she did not.  That is not an issue for the Court and instead is an issue for the fact finder, with counsel for each side advocating matters of weight and credibility that arise from the

evidence. The Court's rulings relative to motions *in limine* reflected that and so will its evidentiary rulings on relevance. Off label use and marketing are issues in this case and the testimony relative thereto is relevant as long as is it is otherwise admissible. In its second argument, a response to the plaintiff's argument, the defendant wants to generalize this as an attack on misconduct. It is clearly not a general attack on misconduct and is quite focused on the specifics of broadening the use of YAZ beyond that which was approved by the FDA. Clearly, the defendant contests vehemently that plaintiff used the drug at issue for an off label use, but that is a question of fact and that is why we seat a jury. In addition, the area of inquiry is clearly far more probative than prejudicial to Bayer.

Generally speaking on the issue of marketing, plaintiff contends she has evidence that Bayer sales representatives were trained to sell YAZ and Yasmin alike, utilizing the air and print media from all over the country. That Bayer is directly responsible for the content of and article placement in print media of many descriptions. The example defendant seizes on is an article in *Latina* magazine and an on air story in the Philadelphia area. Plaintiff advises that it will offer evidence before the Talarico deposition that hard copies of this media coverage were provided to sales representatives to show to doctors. The sales representative assigned to Dr. Shores met with her in excess of 200 times. Further, the purpose of doing so was to help answer doctors questions, help reassure them and encourage them about the use of YAZ and Yasmin for off label use and their safety.

Therefore, the Court finds that because the defendant trained its sales representatives with the air and print media about which it is complaining and because it sent the same air and print media in hard copies with its sales representatives to show doctors in an effort to reassure the doctors about the uses of the subject matter drug regarding off label use and safety, said media is relevant.  Certainly the fact finder is allowed to know what the sales representative is taught about the drug at issue and further what the sales force is taught to convey to doctors about the drug.  Specifically, as far as the *Sims* case, if the sales force is taught what is in the media, air and print, and has it in hand when visiting prescribing doctors – that is in controversy.  Further, if the sales force is taught to use said media to bolster the drug with inquiring physicians, and the sales representative visited plaintiff's prescribing physician more than 200 times an inference is created that said doctor was exposed to the media at issue.  Reliance is also inferential and a matter of weight for the jury to assess.  When a doctor testifies that she relied on the information provided her by the manufacturer of a drug, how does she quantify and separate all of that information.  Some of it comes from the label, some of it comes from the mouth of the sales representative, some of it comes from literature left by the representative, some from literature shown but not left by the representative, and maybe they will not admit it, but perhaps a physician is even persuaded by a commercial or two herself.  But to say that the court must rule out any of this

evidence as irrelevant so that the jury is precluded from considering it is disingenuous at best and fundamentally unfair to say the least.

### 2.    Direct to Consumer Advertising

As for direct to consumer advertising, the plaintiff testified that she is sure she saw many commercials for YAZ.  Just because the only one she remembered for certain and the one that convinced her for certain was the "not gonna take it" commercial, does not make any other commercials irrelevant.  Her testimony that she was sure she had seen others overcomes the defendant's argument that she had not seen any others.  Counsel for Bayer may argue that their ad campaign did not work and that the other ads Ms. Sims had seen had no conditioning effect whatsoever.  That repeated television ads are not designed to get a target audience so used to the name of a product that its name becomes synonymous with the product itself and that it was just the one ad that counted.  The point is, that is a weight and credibility argument, not a relevance argument. Ms. Sims testimony that she is sure she saw other commercials is the critical factor to admissibility of the other commercials.   Just as the analysis with the prescribing physician, reliance is clearly an inference even with the commercials that the plaintiff cannot specifically remember but fit within the category of several others she is sure she saw.  To deprive the jury of the opportunity to weigh this evidence is illegal.

Furthermore, said media is far more probative than prejudicial to Bayer.

### 3.     Letters from the FDA to Berlex

As for the letters from the U.S. Food and Drug Administration (FDA) to Berlex and Bayer, the Court finds such letters generally relevant.  The letters at issue are letters which warn the defendant about marketing the subject drug for more broad based uses than those the FDA approved.  The defendant, in an intertwined manner, objects to these letters on the basis that this case is not a marketing case and that these letters are completely irrelevant and they have nothing whatsoever to do with the plaintiff's or her doctor's reliance on information from the defendant for desiring the subject drug or recommending or prescribing the subject drug, respectively.  As analyzed above, this is in fact a marketing case and an off label use case and all of the air and print media is inextricably intertwined in the effort to influence both doctors and patients to recommend  and take the contraceptives which the defendant was manufacturing.  There is evidence from which the jury can infer, if it chooses, that the defendant was pursuing a concerted effort to promote off label uses of the contraceptives.  The jury could also infer that such broadened indication for the drug is what drew the plaintiff in as a patient user of the drug and she might otherwise not have been a customer.  As a consequence, the letters from the FDA are relevant for the fact finders' consideration to weigh along with the other evidence in the case.

Like the analysis above, the probative value of these letters far outweighs any prejudice to Bayer.

### 4.     Yasmin

A similar analysis applies to evidence of the handling of Yasmin.  Even though the plaintiff did not take Yasmin, plaintiff has asserted throughout this litigation, the evidence clearly indicates the defendant has marketed Yasmin similarly to YAZ.  The theory is that defendant's policies, mindset, demeanor regarding the FDA and marketing decisions regarding Yasmin are so intertwined with YAZ it is clear the corporation did not conduct itself any differently with Yasmin as opposed to YAZ.  There appears to be sufficient evidence to support the theory making the inquiries based thereon clearly relevant and corroborative of plaintiff's theory regarding YAZ marketing. Similarly, this evidence is probative, sufficiently so to outweigh the prejudicial impact on the defendant.

### C.    Objections Requiring Analysis Beyond that Provided by the Court's General Ruling

The objections filed by the defendant and those filed by the plaintiff that require analysis beyond the analysis provided in the Court's general ruling are as follows:

Defendant's objection to plaintiff's cross designation page 21, line 15 through page 22, line 9: the foundation objection is overruled because the answer to the question does not require specialized knowledge as is clear from the witness' answer.   The assumes facts not in evidence objection is overruled because based on the plaintiff's general response, it is clear that the facts will be evidence by the time the deposition will be presented.  Alternatively, if not by then,

shortly thereafter, which is sufficient.   As for improper opinion evidence, the objection is overruled as the witness works with this subject matter on a daily basis and is, therefore, qualified to give a lay opinion.

Defendant's objection to page 41, line 19, through page 43, line 1 regarding improper opinion evidence, the witness did not give an opinion and so the objection is moot.   Given her position with the company, she is qualified in any event.   The objection is overruled.

Defendant's objection to page 43, lines 5 and 6, as well as 9, regarding improper opinion evidence, is overruled, both as moot since she did not give an opinion and she is qualified in any event, given her position with the company.

Plaintiff's objection to page 47 line 15 through page 48 line 20, as non-responsive, is overruled as to page 47 lines 15 through 23, and **SUSTAINED**  as to page 47 line 24 through page 48 line 20.   The Court will take this opportunity, at the first of this type of objection, to note that this witness is clearly hostile to plaintiffs counsel [it is noted this was an MDL deposition with multiple plaintiff counsel present].   Her answers were characteristically unresponsive and evasive and if there was any control it was to get a particular message conveyed.   It was a very difficult deposition to read in that regard, not from a perspective of concern for one party or the other, but in trying to glean responsive answers. So in ruling on objections of this type, the concern is whether there was an attempt to answer question asked, naturally, but with this witness there is never a straight forward

answer, even when Bayer counsel is asking a question.  This question and answer was an example of making virtually no effort to answer the actual question asked and to making every effort to convey a different message.

Plaintiff's objection to page 49, lines 7 through 16, as non-responsive, again **SUSTAINED** for not making any effort to answer the specific question asked, but answering the question, apparently,  the witness would rather answer.

Defendant's objection to page 55, lines 6 through 21, as well as page 55, line 23 through page 56, line 6, as improper opinion testimony, is overruled since it is moot because the witness did not give an opinion, although had she done so she is perfectly qualified to do so, not from a clinician as defendant suggests, which is not what the question asks.  The question only asks about the FDA correspondence and she could have answered that.

Defendant's objection to page 78, line 6 through page 79, line 14, as to the narrative, is overruled.  This is a letter that counsel reads a significant portion of and then asks the witness if he did so correctly.  Plaintiff responded in the general part of her filing that the exhibits of this type will already be in evidence by the time the deposition is presented to the jury.  The Court has broad discretion in the conduct of interrogation.  Asking a question in this fashion, insuring that counsel is accurate about an admitted document's language, is proper.  As for the defendant's assertion that the witness had not seen the document in its general objection text, her answer belies this representation.  She said the letter was

shared with her even though she admitted that she doesn't recall significant knowledge about it. The letter came from her custodial file. As plaintiff argues, the finder of fact can weigh her answers and assess her credibility on those issues, but there is enough evidence for the plaintiff to inquire of the witness about the letter particularly if it is admitted into evidence. This portion of the ruling applies to several following objections of the same nature involving the same letter.

Defendant's objection to page 85, line 10 through page 86, line 6, regarding narrative. The ruling is the same as the immediate previous ruling. This is fair ground for examination since the witness is responsible for public relations in some respects and communications including responding to media questions about YAZ and Yasmin. In that position, the witness has knowledge of the drug at issue and what she does not know is in a position to discover and should discover. The objection is overruled.

Defendant's objection to page 86, lines 8 through 12, for legal conclusion and improper opinion. Once again, overruled, given her position, she is in a place to know and discover and can opine and did know. It is not a legal conclusion.

Defendant's objection to page 88, line 22 through page 90, line 1, regarding foundation, is overruled, since she said she might have seen letter and it is up to jury to decide whether she did or not based on a totality of the evidence.

Plaintiff's objection to page 179, line 18 through page 180, line 11, regarding non-responsiveness, is **SUSTAINED**.   There is a running theme with answers from the witness when asked a question about what YAZ is or is not approved for.   She persistently answers the questions talking about Bayer's materials, rather than answering the question.   She insists on sticking to the message she wishes to convey rather than answer the question asked.

Defendant's objections to page 181 lines 13 through 17 and page 181, line 19 through 182, line 4, regarding speculation and assuming facts not in evidence. Neither objection is valid as the questions and answers don't call for either, so the objections are overruled.   The latter page reference has an objection to relevance and Rule 403 which is covered by the general ruling as well.

Plaintiff's objection to page 200, line 22 through page 201, line 20, regarding non-responsiveness is overruled.   The plaintiff's question is not well formed and asks the witness about what "bothers" her.   While the answer is typical of this witness, it is a little difficult to define objectively what is responsive to what bothers a witness, so it appears the answer could be responsive.

Plaintiff's objection to page 211, lines 5 through 21, regarding non-responsiveness, is overruled.   Once again, asking a witness a question if she shares someone's sentiment leaves them a wide open field in which to roam and a witness like this one seems apt to take advantage of that leeway.   It is too hard to assess non-responsiveness given the parameters allowed.

14

Defendant's objection to page 214, lines 19 to 23, [in addition to relevance and Rule 403] regarding assumes fact not in evidence and calls for speculation, **SUSTAINED** on the basis of speculation.  This question asks if the public believes one thing it will potentially result in more drug sales.  This is a theory, but the plaintiff does not cite a study or an expert or anything beyond rank speculation for the question.  Overruled for all the other objections, see the general ruling and does not assume facts not in evidence.

Defendant's objection to page 215, lines 1 through 14, [in addition to relevance and Rule 403] regarding assumes fact in evidence and calls for speculation, **SUSTAINED** as to lines 1 through 5, the lines constituting the answer to the question disallowed in the ruling immediately prior hereto. **SUSTAINED** as to lines 6 through 14 because the plaintiff does not know what the information means and cannot speculate regarding the mindset of the author of the communication.  Overruled for all the other objections, see the general ruling and does not assume facts not in evidence.

Plaintiff's objection to page 217 lines 3 through 22, regarding non-responsiveness, is **SUSTAINED.**   Once again the witness talks unresponsively about the materials and does not answer the question.

15

The Court's ruling immediately above raises a question whether the plaintiff's cross designation stays in at page 218, page 10 through line 219, line 2, for the reason of non-necessity with the defendant's designation, above, being excluded.  However, if it stays, the defendant's objection within at page 218, line 18 through page 219, line 1 for improper opinion and foundation is overruled given the witness' position and her exposure to the FDA letters as well as the defendant's obligation to comply with the laws and regulations regarding approval and labels, of which all employees, particularly an employee such as this witness should be aware, certainly qualifying her to give lay opinions about the subject matter at issue.

The plaintiff's objection to page 221, line 22 through page 222, line 8, regarding non-responsiveness, is overruled in part and sustained in part.  In the usual effort to find an answer that is responsive to the question asked, the court could pinpoint responsiveness through the second sentence, assuming the first sentence to be: No.  So, the second sentence ends in PMDD.  Thereafter, however, the answer becomes non-responsive and must be stricken, so the objection is **SUSTAINED**  from the third sentence thereafter and that portion of the answer is stricken.

Plaintiff's objection to page 248, pages 7 through 22, for non-responsiveness, is **SUSTAINED.**  The question is whether it is important when communicating . . . and once again the witness talks about the material the defendant provides, the same message.  Buried within the broader message is the

16

statement, "that is correct."  However, while that statement if standing alone could be responsive, but when taken in the context of the entire answer is hard to discern if responsive to the question or qualifying the other part of the answer and therefore part of the broader message.

Defendant's objection to page 268, lines 5 through 8, a form objection on the basis of mischaracterization, is overruled on the finding that the interrogator does not mischaracterize.  The witness had given an answer that since the email indicates the article in question states YAZ is the first contraceptive pill approved to treat PMS is not precise as defendant would liked to have seen it.  That is imprecise and incorrect and therefore is not a mischaracterization.

Plaintiff's objection to page 274, lines 10 through 21, for non-responsiveness, is **SUSTAINED.**  The question is "I mean, don't you think it's important for the entirety of the communication to be accurate?"  The witness talks of what she is not responsible for.  She then makes this statement that is likely responsive, "It would be ideal for them to be as precise as possible, yes, of course." Then retreats from the statement by discussing how she cannot be responsible for the communication.   Therefore, overall the answer is not responsive, and it is clear from the designation that the defendant is not interested in offering only that portion which is, since it loses the context in which the defendant is clearly most interested.

Defendant's objection to page 305, line 12 through page 306, line 1, for controversy MIL, relevancy and Rule 403, is **SUSTAINED** on the basis of

controversy and relevance.  The question and answer deal with Gardasil.  In the answer, the witness points out that Gardasil is not a Bayer product, and therefore it is immaterial and irrelevant to this litigation.

Defendant's objections to page 336, lines 2 through 19, and lines 22 through page 337 page 6, [in addition to the off-label and lack of reliance objections] on the basis of foundation, is overruled as moot because she answers that she does not know.  Often a question such as this might be excluded as speculative, not in a position to know the mindset of the person questioned about, but this witness' position eliminates both the foundation and speculation objections.  The jury can assess her credibility when she professes a lack of knowledge.

Defendant's objection to page 372, line  23 through page 373, line 11, on the basis of relevance, is overruled and the parties are directed to the general ruling above.  (This specific ruling is entered because is not the usual off-label, no reliance objection.)

Defendant's objection to page 385, lines 10 through 21, on the basis of relevance, is overruled and the parties are directed to the general ruling above. (This specific ruling is entered because is not the usual off-label, no reliance objection.)

The next series of objections are plaintiff's and relate to long designations by defendant of the testimony of the witness.  If the witness were called live by the plaintiff everyone present would hear the court ask counsel for the defendant if

defendant had clarification questions he or she wished to ask.  When a plaintiff calls a witness that is so associated with a party as to be evasive and hostile in answering questions for the party that opposes that party as this witness clearly evidenced in her testimony, the court would allow the party to ask leading questions of the witness.  In effect, then such an examination is a cross examination not a direct examination.  Therefore, when that examination is complete, during the party's case in chief, there is a danger for jury confusion when they are accustomed to the usual cadence and type of evidence gathering that is reflected in the typical direct and cross examination.  So any examination by the party associated with or that benefits from the obvious intention of the witness is one that seeks to clarify the witness's previous answers which presumably were leading and somewhat controlling in direction and content and the examination is not an additional cross examination.  As such, that examination is not allowed to proceed with leading questions since the witness is an identified partisan and it would be just as unfair as allowing plaintiff's counsel to lead the plaintiff on substantive questions.  In this series of objections, the plaintiff breaks up the objections in different groups, with the objections applying to long stretches of testimony.

Plaintiff objects to page 741, line 17 through page 753, line 4, on the basis of relevancy, scope, foundation and leading.  This testimony starts out briefly with when the witness started work at Berlex and Bayer and when YAZ was approved and moves right into the press release process regarding the approval of YAZ.

The Court finds this testimony to be relevant, to be within the scope of the cross examination of the witness and sufficient foundation in light of the plaintiff's examination of the witness.   Many questions are not leading, however, some are unquestionably leading and the Court refers to the discussion above regarding the danger of allowing leading questions in such an examination.   The Court, during live courtroom testimony, holds a tight rein on this kind of examination.   It finds no reason to analyze it any differently here.   Therefore, the plaintiff's objection for leading  is **SUSTAINED**  regarding the following lines:

Page 745, lines 2 through 8.

Page 746, lines 4 through 6.

Page 747, lines 7 through 19.

Page 748, lines 14 through 18.

Page 748, lines 19 through 23.

Page 749, lines 6 through 12.

Page 751, lines 11 through 15.

Page 751, line 23 through page 752, line 13.   The court notes that the follow-up question at page 752, line 14 through page 753, line 4 is likely nonsensical without the question and answer precluded by the Court with this ruling.

Plaintiff objects to page 753, line 13 through page 761, page 12, again based on relevancy, scope, foundation and leading.   The Court's again overrules

the objection, on the same basis as the above ruling, regarding relevance, scope and foundation.  Regarding leading, while it is true there are a couple of questions that are somewhat leading, and despite the Court's practice of tight control, the questions at issue are background material, do not involve substantive material and do not convey answers to the already partisan witness.  In that way, they are harmless and not prejudicial to the plaintiff and the Court will not sustain the objection.  This block of testimony is characterized with non-leading questions, with those minor exceptions.

Plaintiff then objects to page 761, line 15 through page 767, line 19, based again on relevancy, scope, foundation and leading.  For the same reasons as stated above, the Court overrules the objections as to relevancy, scope and foundation.   The Court finds the plaintiff's objections as to leading are **SUSTAINED** regarding the following lines:

Page 761, line 20 through line 22.

Page 761, line 23 through page 762, line 2.

Page 762, line 13 through line 16.

Page 762, line 17 through line 20.

Page 766, line 16 through line 19.

Plaintiff objects to page 768, lines 6 through 19, based on relevancy, scope, foundation and leading.  The Court overrules all of these objections for the reasons stated above, in addition to the reason that it does not find any questions to be leading.

Plaintiff objects to page 768, line 20 through page 769, line 17, based on relevancy, scope, foundation and leading.  The Court overrules all of these objections for the reasons stated above, in addition to the reason that it does not find any questions to be leading.

Plaintiff objects to page 770, lines 6 through 14, based on relevancy, scope, foundation and leading.  The Court overrules all of these objections for the reasons stated above, in addition to the reason that it does not find any questions to be leading.

Plaintiff objects to page 771, line 5 through page 776, line 2, based on relevancy, scope, foundation and leading.  The Court overrules the objections for relevancy, scope, and foundation for the reasons stated above.  The Court finds the plaintiff's objections as to leading are **SUSTAINED** regarding the following lines:

Page 771, lines 5 through 7.

Page 771, lines 8 through 10.

Page 772, lines 10 through 16.

Page 773, lines 12 through 15.

Page 773, lines 20 through 22.

Page 773, lines 23 through 24.

Page 774, lines 1 through 5.

Page 775, lines 9 through 12.

Page 775, lines 21 through 23.

Page 775, line 24 through page 776, line 2.

Page 776, lines 20 through 24.

Page 778, lines 7 through 10.

Page 778, lines 14 through 18.

Page 778, lines 19 through 24.

Page 779, lines 16 through 19.

Page 779, lines 20 through 23.

Page 780, lines 8 through 12.

Page 781, lines 2 through 11.

Page 781, line 23 through page 782, line 8.


This concludes the defendant's clarification portion of the deposition.  Following

the clarification, plaintiff counter-designated testimony to be presented to the jury.

Defendant objects to page 785, line 17 through page 792, line 9, on the

basis of [the usual off-label and no reliance reasons] form, in that, it is asserted

that the question is argumentative.  The objection, based on argumentative is

overruled, as well, on the basis that the Court does not find it to be argumentative.

The last two objections to consider are defendants' identical objections to pages 800, lines 2 through 13.   Twice in the course of that short span of interrogation, plaintiff's counsel asks the witness if she intended to mislead the jury regarding prior answers.   The objections are as to form, argumentative, and improper character interrogation pursuant to evidentiary rule 404(b).   Given the evasive nature of the witness' answers and her demeanor during this deposition generally, this is clearly proper cross examination and not argumentative.   As cross examination that goes to her credibility during her testimony before the jury it is clearly not 404(b) evidence as it is not prior bad act but an inquiry into a potential current bad act.   Ultimately, of course, the jury will determine the credibility issues, but it is appropriate for counsel to inquire.

### III.   Conclusion

In **CONCLUSION**, the only objections that are **SUSTAINED** are to the following:

Page 47 line 24 through page 48 line 20.

Page 49, lines 7 through 16.

Page 179, line 18 through page 180, line 11.

Page 214, lines 19 to 23.

Page 215, lines 1 through 14.

Page 217 lines 3 through 22.

Page 222 line 3 following the abbreviation PMDD through line 8.

Page 248, pages 7 through 22.

Page 274, lines 10 through 21.

Page 305, line 12 through page 306, line 1.

Page 745, lines 2 through 8.

Page 746, lines 4 through 6.

Page 747, lines 7 through 19.

Page 748, lines 14 through 18.

Page 748, lines 19 through 23.

Page 749, lines 6 through 12.

Page 751, lines 11 through 15.

Page 751, line 23 through page 752, line 13.

Page 761, line 20 through line 22.

Page 761, line 23 through page 762, line 2.

Page 762, line 13 through line 16.

Page 762, line 17 through line 20.

Page 766, line 16 through line 19.

Page 771, lines 5 through 7.

Page 771, lines 8 through 10.

Page 772, lines 10 through 16.

Page 773, lines 12 through 15.

Page 773, lines 20 through 22.

Page 773, lines 23 through 24.

Page 774, lines 1 through 5.

Page 775, lines 9 through 12.

Page 775, lines 21 through 23.

Page 775, line 24 through page 776, line 2.

Page 776, lines 20 through 24.

Page 778, lines 7 through 10.

Page 778, lines 14 through 18.

Page 778, lines 19 through 24.

Page 779, lines 16 through 19.

Page 779, lines 20 through 23.

Page 780, lines 8 through 12.

Page 781, lines 2 through 11.

Page 781, line 23 through page 782, line 8.

**IT IS SO ORDERED.**

Signed this 27th day of December, 2011.

David R. Herndon
2011.12.27
14:23:37 -06'00'

**Chief Judge**
**United States District Court**